## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| HANS BAUMGARTNER, Individually and for Others Similarly Situated<br><br>v.<br><br>ALKU, LLC | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Hans Baumgartner (Baumgartner) brings this class and collective action to recover unpaid overtime wages and other damages from ALKU, LLC (ALKU).

2. ALKU employed Baumgartner as one of its Salaried Employees (defined below) in Massachusetts.

3. Baumgartner and the other Salaried Employees regularly work more than 40 hours a workweek.

4. But ALKU does not pay Baumgartner and its other Salaried Employees overtime.

5. Instead, ALKU uniformly misclassifies Baumgartner and the other Salaried Employees as overtime exempt employees and pays them a salary and no overtime compensation.

6. ALKU's uniform salary pay scheme violates the Fair Labor Standards Act (FLSA) and Massachusetts Wage and Hour Law (MWHL) by depriving non-exempt employees (Baumgartner and the other Salaried Employees) of overtime wages for their hours worked in excess of 40 a workweek.

### JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. This Court has supplemental jurisdiction of the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

9. This Court has general personal jurisdiction over ALKU because ALKU resides in Massachusetts.

10. Specifically, ALKU is a domestic limited liability company with its headquarters in resides in Andover, Massachusetts.

11. Venue is proper because ALKU is headquartered in Andover, Essex County, Massachusetts, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

12. No arbitration agreement exists between Baumgartner and ALKU affecting any of the allegations contained in this complaint.

## PARTIES

13. Baumgartner worked for ALKU as an Account Manager from approximately August 2022 through March 2023.

14. Throughout his employment, ALKU misclassified Baumgartner as exempt and paid him under its uniform salary pay scheme.

15. Baumgartner's written consent is attached as **Exhibit 1**.

16. Colleen Ellis's (Ellis) written consent is attached as **Exhibit 2**.

17. Baumgartner brings this class and collective action on behalf of himself and all other similarly situated Account Managers and Recruiters who ALKU paid under its salary pay scheme.

18. ALKU misclassified each of these Account Managers and Recruiters as exempt and paid them a salary with no overtime wages for the hours they worked in excess of 40 a workweek.

19. The putative collective of similarly situated employees is defined as:

> **All ALKU Account Managers and Recruiters who were paid a salary and no overtime at any time in the past 3 years (the "FLSA Collective Members").**

20. Baumgartner also seeks to represent such a class under the MWHL pursuant to FED. R. CIV. P. 23.

21. The Massachusetts Class of similarly situated employees is denied as:

> **All ALKU Account Managers and Recruiters who were paid a salary and no overtime while working in Massachusetts at any time during the past 3 years ("Massachusetts Class Members").**

22. The FLSA Collective Members and Massachusetts Class Members are collectively referred to as the "Salaried Employees."

23. ALKU is a Massachusetts limited liability company headquartered in Andover, Massachusetts.

24. ALKU can be served through its registered agent: **Corporation Service Company, 84 State Street, Boston, Massachusetts 02109**.

## FLSA COVERAGE

25. At all relevant times, ALKU was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

26. At all relevant times, ALKU was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

27. At all relevant times, ALKU was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, computers, pens, paper, etc. – that have been moved in or produced for commerce.

28. At all relevant times, ALKU has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

29. At all relevant times, the Salaried Employees were ALKU's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

30. At all relevant times, the Salaried Employees were engaged in commerce or in the production of goods for commerce.

31. ALKU uniformly misclassified the Salaried Employees as exempt and paid them a salary with no overtime wages.

32. As a result of ALKU's illegal salary pay scheme, ALKU deprived non-exempt employees (Baumgartner and the other Salaried Employees) of the overtime wages they are owed for their hours worked in excess of 40 a workweek.

33. ALKU's salary with no overtime pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

34. "ALKU is a highly specialized consulting services firm headquartered in Andover, MA, with 7 offices nationwide."[1]

35. ALKU additionally holds itself out "as one of the fastest-growing staffing firms in the U.S. because of [its] unrelenting commitment to being the best. . . . and there is no one who will work as hard as us. Ever."[2]

36. To provide the staffing services ALKU markets to its customers, ALKU employs Account Managers and Recruiters, including Baumgartner and the other Salaried Employees.

37. For example, Baumgartner worked for ALKU as an Account Manager from approximately August 2022 through March 2023.

---

[1] https://www.alku.com/about/ (last visited July 12, 2024).
[2] https://www.alku.com/ (last visited July 12, 2024).

4

38. As an Account Manager, Baumgartner's primary job duties included sourcing hiring managers needing to hire candidates with knowledge and experience utilizing enterprise resource planning (ERP) software and cold calling these hiring managers.

39. Baumgartner would regularly place approximately 300 phone calls a workday to hiring managers.

40. When Baumgartner secured a hiring manager who agreed to utilize ALKU to fill an open role, he communicated this to ALKU Recruiters, so that they could provide a list of potential candidates to fill the open role, which Baumgartner would then provide to the hiring manager.

41. Just as Baumgartner placed hundreds of calls to hiring managers each workday, Recruiters, such as Ellis, placed hundreds of calls to potential candidates each workday.

42. Account Managers, such as Baumgartner, and Recruiters, such as Ellis, perform the same or similar job duties.

43. Throughout his employment, ALKU classified Baumgartner as exempt and paid him a flat salary every workweek and failed to pay him overtime wages when he worked in excess of 40 hours a workweek.

44. And Baumgartner worked approximately 50 to 60 hours every workweek throughout the relevant period.

45. And under its uniform, illegal salary pay scheme, ALKU did not pay Baumgartner overtime wages for his overtime hours worked, in willful violation of the FLSA and in violation of the MWHL.

46. Baumgartner's working relationship with ALKU is the same or similar to that of the other Salaried Employees.

47. Indeed, ALKU pays its other Salaried Employees under the same illegal salary pay scheme it imposed on Baumgartner.

48. Baumgartner's work schedule is typical of the other Salaried Employees.

49. Like Baumgartner, the other Salaried Employees typically work approximately 50 to 60 hours a workweek.

50. ALKU knows Baumgartner and the other Salaried Employees regularly work approximately 50 to 60 hours a week to complete their heavy workloads in accordance with ALKU's strict productivity and operational requirements.

51. But ALKU does not pay Baumgartner or the other Salaried Employees overtime wages for their hours worked in excess of 40 a workweek.

52. Instead, ALKU pays Baumgartner and the other Salaried Employees a salary for all hours worked.

53. Despite misclassifying Baumgartner and the other Salaried Employees as exempt, these employees primarily perform non-exempt job duties.

54. Baumgartner's and the other Salaried Employees' primary duties do not include supervising other ALKU employees.

55. Baumgartner's and the other Salaried Employees' primary duties are not management.

56. ALKU does not require Baumgartner and the other Salaried Employees to have an advanced degree as a standard prerequisite to become an ALKU Account Manager or Recruiter.

57. Indeed, Baumgartner's and the other Salaried Employees' primary duties do not require the exercise of independent judgment or discretion with respect to matters of significance.

58. Rather, Baumgartner's and the other Salaried Employees' primary duties are routine and largely governed by standardized plans, procedures, and checklists created by ALKU (and/or its clients).

59. Virtually every job function is predetermined by ALKU (and/or its clients), including the candidates they recruit, the call scripts and outlines they use, the schedule of work, and related work duties.

60. In sum, Baumgartner and the other Salaried Employees are non-exempt employees and, therefore, entitled to overtime wages.

61. But ALKU does not pay these non-exempt employees, including Baumgartner and the other Salaried Employees, overtime wages when they work more than 40 hours a workweek, in willful violation of the FLSA and in violation of the MWHL.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

62. Baumgartner incorporates all other paragraphs by reference.

63. The Salaried Employees are victimized by ALKU's salary pay scheme, which is in willful violation of the FLSA and in violation of the MWHL.

64. Other Salaried Employees worked with Baumgartner and indicated they were paid in the same manner, performed similar work, and were subject to ALKU's same illegal salary pay scheme.

65. Based on his experience with ALKU, Baumgartner is aware ALKU's illegal salary pay scheme was imposed on the other Salaried Employees.

66. The Salaried Employees are similarly situated in the most relevant respects.

67. Even if their precise job duties or locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime pay.

68. Rather, ALKU's uniform salary pay scheme renders Baumgartner and the other Salaried Employees similarly situated for the purpose of determining their right to overtime pay.

69. ALKU's records show it paid the Salaried Employees a salary with no overtime wages for their hours worked in excess of 40 a workweek.

70. The back wages owed to Baumgartner and the other Salaried Employees can therefore be calculated using the same formula applied to the same records.

71. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to ALKU's records, and there is no detraction from the common nucleus of liability facts.

72. Therefore, the issue of damages does not preclude class or collective treatment.

73. Baumgartner's experiences are therefore typical of the experiences of the other Salaried Employees.

74. Baumgartner has no interest contrary to, or in conflict with, the other Salaried Employees that would prevent collective treatment.

75. Like each Salaried Recruiter, Baumgartner has an interest in obtaining the unpaid wages and penalties owed under federal and Massachusetts law.

76. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of this lawsuit.

77. Absent this class and collective action, many Salaried Employees will not obtain redress for their injuries, and ALKU will reap the unjust benefits of violating the FLSA and MWHL.

78. Further, even if some of the Salaried Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

79. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Salaried Employees and provide judicial consistency.

80. Indeed, the multiplicity of action would create a hardship to the Salaried Employees, the Court, and ALKU.

81. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Salaried Employees' claims.

82. The questions of law and fact that are common to each Salaried Employee predominate over any questions affecting solely the individual members.

83. Among the common questions of law and fact are:

   a. Whether ALKU misclassified Baumgartner and the other Salaried Employees are exempt from overtime;

   b. Whether ALKU engaged in a policy and practice of failing to pay Baumgartner and the other Salaried Employees overtime wages when these employees worked more than 40 hours in a workweek in violation of the FLSA and MWHL;

   c. Whether ALKU's decision not to pay Baumgartner and the other Salaried Employees overtime compensation was made in good faith;

   d. Whether ALKU's decision to classify Baumgartner and the other Salaried Employees as exempt employees was made in good faith; and

   e. Whether ALKU's violations of the FLSA were willful.

84. Baumgartner knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and collective action.

85. As part of its regular business practices, ALKU intentionally, willfully, and repeatedly violated the FLSA with respect to Baumgartner and the other Salaried Employees.

86. ALKU's illegal salary pay scheme deprived Baumgartner and the other Salaried Employees of the overtime compensation they are owed under federal law (and Massachusetts law).

87. There are many similarly situated Salaried Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

88.     The Salaried Employees are known to ALKU, are readily identifiable, and can be located through ALKU's business and personnel records.

### ALKU's FLSA Violations Were Willful and/or Done in Reckless Disregard of the FLSA

89.     Baumgartner incorporates all other paragraphs by reference.

90.     ALKU knew it was subject to the FLSA's overtime provisions.

91.     ALKU knew the FLSA required it to pay non-exempt employees, including Baumgartner and the other Salaried Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 a workweek.

92.     ALKU knew Baumgartner and the other Salaried Employees worked more than 40 hours in at least one workweek during the relevant period.

93.     ALKU knew it paid Baumgartner and the other Salaried Employees a salary with no overtime compensation, even when these employees worked in excess of 40 hours a workweek.

94.     ALKU knew Baumgartner's and the other Salaried Employees' primary duties did not include management.

95.     ALKU knew Baumgartner's and the other Salaried Employees' primary duties did not include exercising independent discretion or judgment with respect to matters of significance.

96.     ALKU knew Baumgartner and the other Salaried Employees primarily performed non-exempt work.

97.     Nonetheless, ALKU uniformly misclassified Baumgartner and the other Salaried Employees as exempt and refused to pay them overtime compensation.

98.     ALKU's decision to misclassify Baumgartner and the other Salaried Employees as exempt was neither reasonable, nor was it made in good faith.

99. Likewise, ALKU's failure to pay Baumgartner and the other Salaried Employees overtime was neither reasonable, nor was its decision not to pay these employees overtime made in good faith.

100. ALKU knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA.

101. ALKU knowingly, willfully, and/or in reckless disregard carried out this illegal salary pay scheme that systematically deprived the Salaried Employees of overtime wages for the hours these non-exempt employees worked after 40 in a workweek in violation of the FLSA.

### ALKU'S FLSA VIOLATIONS WERE NOT DONE IN GOOD FAITH

102. Baumgartner incorporates all other paragraphs by reference.

103. ALKU did not investigate whether paying Baumgartner and the other Salaried Employees a flat weekly salary and no overtime compensation violated the FLSA.

104. ALKU did not seek the advice of counsel regarding whether paying Baumgartner and the other Salaried Employees a flat weekly salary and no overtime compensation violated the FLSA.

105. ALKU did not receive advice from counsel regarding whether paying Baumgartner and the other Salaried Employees a flat weekly salary and no overtime compensation violated the FLSA.

106. ALKU did not rely on the advice of counsel in deciding to impose its salary pay scheme on Baumgartner and the other Salaried Employees.

107. ALKU's decision to pay Baumgartner and the other Salaried Employees a flat weekly salary and no overtime compensation was neither reasonable nor made in good faith.

### COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE MEMBERS)

108. Baumgartner incorporates all other paragraphs by reference.

109. Baumgartner brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

110. ALKU violated, and is violating, the FLSA by employing non-exempt employees (Baumgartner and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked in excess of 40 a workweek. 29 U.S.C. § 207(a).

111. ALKU's unlawful conduct harmed Baumgartner and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

112. Accordingly, ALKU owes Baumgartner and the other FLSA Collective Members the difference between the rate actually paid and the proper overtime rate.

113. Because ALKU knew, should have known, and/or showed reckless disregard for whether its salary pay scheme violated the FLSA, ALKU owes these wages for at least the past 3 years.

114. ALKU is also liable to Baumgartner and the other Salaried Employees for an amount equal to all unpaid overtime as liquidated damages.

115. Finally, Baumgartner and the other Salaried Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### COUNT II
**FAILURE TO PAY OVERTIME WAGES UNDER THE MWHL**
**(MASSACHUSETTS CLASS MEMBERS)**

116. Baumgartner incorporates all other paragraphs by reference.

117. Baumgartner brings his MWHL claims as a class action on behalf of himself and the other Massachusetts Class Members pursuant to FED. R. CIV. P 23.

118. At all relevant times, ALKU was a covered "employer" within the meaning of the MWHL. *See* M.G.L. 151 § 2.

119. At all relevant times, ALKU employed Baumgartner and the other Massachusetts Class Members as covered "employees" within the meaning of the MWHL. *See* M.G.L. 151 § 2.

120. The MWHL requires employers, like ALKU, to pay non-exempt employees, including Baumgartner and the other Massachusetts Class Members, overtime wages at rates not less than 1.5 the employee's regular rate of pay for all hours worked in excess of 40 a workweek. *See* M.G.L. 151 § 1A.

121. Baumgartner and the other Massachusetts Class Members are entitled to overtime pay under the MWHL.

122. ALKU violated, and is violating, the MWHL by employing non-exempt employees (Baumgartner and the other Massachusetts Class Members) for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked in excess of 40 a workweek. *See* M.G.L. 151 § 1A.

123. ALKU's unlawful conduct harmed Baumgartner and the other Massachusetts Class Members by depriving them of the overtime wages they are owed.

124. Accordingly, Baumgartner and the Massachusetts Class Members are entitled to recover their unpaid overtime wages under the MWHL in an amount equal to 1.5 times their regular rates of pay, plus treble damages, as well as attorney's fees and costs. *See* M.G.L. 151 § 1B.

## JURY DEMAND

125. Baumgartner demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Baumgartner, individually and on behalf of the other Salaried Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Baumgartner and his counsel to represent the interests of the Salaried Employees;

d. An Order pursuant to Section 16(b) of the FLSA finding ALKU liable for unpaid overtime wages due to Baumgartner and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order pursuant to the MWHL finding ALKU liable for unpaid overtime wages due to Baumgartner and the Massachusetts Class Members, plus treble damages in an amount equal to two times their unpaid wages;

f. A Judgment against ALKU awarding Baumgartner and the Salaried Employees all their unpaid overtime wages, liquidated damages, treble damages, and any other penalties available under the FLSA and/or MWHL;

g. An Order awarding attorney's fees, costs, and expenses;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: July 22, 2024.                          Respectfully submitted,

**GORDON LAW GROUP LLP**

By: _/s/ Philip J. Gordon_
Philip J. Gordon
Mass. BBO# 630989
Kristen M. Hurley
Mass. BBO# 658237
585 Boylston Street
Boston, Massachusetts 02116
Phone: (617) 536-1800
Fax:     (617) 536-1802
pgordon@gordonllp.com
khurley@gordonllp.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:     (713) 877-8065
rburch@brucknerburch.com

*_Pro hac vice applications forthcoming_

**ATTORNEYS FOR BAUMGARTNER & THE SALARIED EMPLOYEES**